IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| PAMELA SUE BOND, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Case No. 4:14-cv-00013 |
| v. | ) ) | **MEMORANDUM OPINION** |
| UNITED STATES DEPARTMENT OF EDUCATION, | ) ) ) ) | By: Hon. Jackson L. Kiser Senior United States District Judge |
| Defendant. | ) | |

On June 19, 2014, Defendant United States Department of Education filed its Motion to Dismiss or, in the alternative, Motion for Summary Judgment. [ECF No. 6.] The matter has now been fully briefed, and the parties appeared before me on August 14, 2014, to argue their positions. Having fully considered the pleadings and arguments of the parties, the matter is now ripe for disposition. For the reasons stated herein, I will grant Defendant's Motion to Dismiss and dismiss this case.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

Plaintiff Pamela Sue Bond ("Plaintiff") was admitted to the Yale University School of Nursing in July of 1991. (See Compl. Ex. A [ECF No. 3].) In the fall of that year, she entered Yale as a student. (Id. ¶ 1.) Plaintiff asserts that, in April of 1992, she made a decision to return to Yale the next year, and thereafter applied for a Stafford student loan to cover some of her expenses. (Id. ¶ 2.) The student loan application, however, is dated by her hand "1-13-91," and is file stamped "Jan 14 1992." (Id. Ex. B.)[2] The loan was offered by the Connecticut Student

---

[1] The facts are taken from Plaintiff's *pro se* Complaint. As this stage, it is appropriate to accept Plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] Plaintiff has inconsistently lettered and identified the exhibits to her Complaint. For example, she jumps from Exhibit B to Exhibit G even though there are nine intervening pages and none are identified. For

Loan Foundation. (Id.) Plaintiff avers that she was only registered for one class for the Fall 1992 semester, "Pediatric Physical Exams," and that Dr. Debbie Ferholt was assigned to teach the course. (Id. ¶ 3.) Dr. Ferholt only appeared for approximately 25% of the scheduled classes. (Id.)

Plaintiff says she paid for part of the semester in the fall, but that she found it necessary to take out a small loan to apply towards tuition. (Id. ¶ 4.) Tuition, at that time, included student health insurance through Blue Cross & Blue Shield. (Id.) Plaintiff apparently signed a promissory note to secure the loan. (See id. ¶ 5.) Whether the promissory note Plaintiff provides as Exhibit A to her Complaint (the note dated January 1992) and the note that she claims to have signed in April 1992 are the same is unclear. A week after signing the promissory note, Dr. Ferholt informed Plaintiff that she had failed a pediatric physical exam. (Id. ¶ 5.) According to Yale, Plaintiff withdrew as a student mid-semester, and Yale refunded a third of her tuition. (See id. Ex. M.)

Sallie Mae contacted Plaintiff on February 23, 1993, to inform her that Yale sold Plaintiff's student loan to Sallie Mae. (See id. Ex. D.) Plaintiff requested a "medical reprieve from payments due to her son's medical problems." (Id. ¶ 7.) Plaintiff does not specify when she made that request or to whom it was made. It appears, however, that Sallie Mae granted Plaintiff a deferment from May 25, 1993, until November 25, 1993. (Pl.'s Add. to Ans. to Def.'s Resp. to Mot. to Admit Evid., Ex. B, Aug. 4, 2014 [ECF No. 22].) Sallie Mae sent Plaintiff a letter on April 15, 1994, informing her that she was "headed for default." (Compl. Ex. D.) Plaintiff forwarded Sallie Mae a check for $68.00 on April 28, 1994; the memo line read, "For white collar criminals." (Id.) Sallie Mae sent Plaintiff a "final demand" for payment on July 28,

---

ease of reference, the exhibits have been appropriately re-lettered in the order in which they are attached to the Complaint. All references herein use the re-numbered paginations.

- 1 -

1995.[3]  (Id. Ex. E.)  On May 22, 1997, the Financial Collections Agency informed Plaintiff that she owed $5,217.81 on the note, plus an additional $2,170.43 in "other charges," for a total of $7,388.04.  (Id. Ex. F.)  On August 29, 1998, Diversified Collections Services, Inc., informed Plaintiff that her loan had been referred to it for collection, and that the balance owed was $7,891.77.  (Id. Ex. G.)

In November of 2001, Van Ru Credit Corporation ("Van Ru") informed Plaintiff that it had "afforded [her] every opportunity to honor [her] obligations to" the loan originator, and that the balance she owed now totaled $9,515.52.  (Id. Ex. H.)  At some point after receiving this correspondence, someone from the Florida Comptroller's office contacted Van Ru on Plaintiff's behalf.  (Id. Ex. I.)  Van Ru replied that Plaintiff had been provided the necessary forms "to advance [her] account.  To this date [April 15, 2002] Van Ru or Connecticut Student Loan has not received the disability forms from Ms. Bond."  (Id.)

Plaintiff asserts that, every time she attempted "to clarify the balance [on her loan], the government would assign a new collection agency in a new state."  (Id. ¶ 11.)  She also asserts that the latest collection agency in California "could not be contacted because the Post office marked correspondence as not being deliverable."  (Id. ¶ 12.)

Plaintiff avers that the Treasury Department has been garnishing her early retirement benefits from Social Security.  (Id. ¶ 13.)  On April 24, 2013, the Department of Treasury sent Plaintiff a letter indicating that it would be forwarding a portion of her Social Security benefits to pay the loan held by the U.S. Department of Education.  (Id. Ex. K.)  Plaintiff had $135.75 withheld from her $905.00 monthly benefit.  (Id.)  She also claims that ten years worth of

---

[3] Plaintiff has also provided two "phone slips" indicating that, on May 4, 1995, and June 16, 1995, "Walter Kannasky" or "Mr. Kornasky" from Connecticut Student Loan Foundation called her.  (See Compl. Ex. L.)  Plaintiff contends this is harassment, and that the Treasury Department and Department of Education "have also advertised the debt by calling neighbors."  (Id. ¶ 16.)
...

withholding from her tax returns is not indicated on a listing of withheld payments from the government. (See id. Ex. J.)

Plaintiff also asserts that the original note was "doctored." She asserts that, in January of 2013, she resided in Maryland and not in Connecticut.[4] She also asserts that she would "never" use her biological sister, Peggy Ervin, as a reference due to her "mental health diagnosis."[5] (Id. ¶ 14.) She requests that "this Court dismiss the fraudulent note submitted for payment, calculate all payments made on the loan, return what is appropriate to the Plaintiff in the amount of approximately $5,000.00, and return improperly 'garnished' Social Security Benefits to the Plaintiff immediately." (Id. ¶ 17 (unnumbered).)

Plaintiff filed her Complaint *pro se* on April 3, 2014, and requested *in forma pauperis* status at the time. (See Mot. to Proceed *in forma pauperis*, Apr. 3, 2014 [ECF No. 1].) I denied that Motion because the Fair Debt Collections Practices Act sets a one-year statute of limitations. (See Order, Apr. 4, 2014 [ECF No. 3] (citing 15 U.S.C. § 1692k(d) (2014)).) Nevertheless, Plaintiff paid the filing fee three days later. On June 19, 2014, Defendant filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. [ECF No. 6.] Plaintiff replied on June 30, 2014, and has since filed two addendums: a motion to admit evidence (which I granted), and an "Addendum to Reply/Answer." I heard oral arguments on the Motion on August 14, 2014.

---

[4] The relevance of this assertion to a note signed in 1992 is unclear.

[5] It is unclear whether Plaintiff means her own mental health diagnosis or her sister's mental health diagnosis. Plaintiff appears to allege that her sister, Peggy Ervin, was instrumental in arranging Plaintiff's commitment to the "Bridgeport Asylum" in 1996. (See Pl.'s Obj. to Def. Mem. of Law ¶ 10, June 30, 2014 [ECF No. 15].)

- 3 -

## **STANDARD OF REVIEW**

As an initial matter, *pro se* complaints are held to "less stringent standards than the formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

When a challenge to subject matter jurisdiction is raised under Rule 12(b)(1), "the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. "The court must grant the motion 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Little v. Stock Bldg. Supply, LLC, Case No. 4:10-cv-129, 2011 WL 5146179, at *3 (E.D.N.C. Sept. 2, 2011) (quoting Richmond, 945 F.2d at 768).

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380 (2007);

Anderson, 477 U.S. at 249−50, 254. A fact is material where it might affect the outcome of the case in light of the controlling law. Anderson, 477 U.S. at 248. On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts. Scott, 550 U.S. at 380. At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial. Anderson, 477 U.S. at 249. It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature. Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

## DISCUSSION

Although pro se complaints are to be given a liberal construction, it is not the Court's job to act as advocate for the plaintiff or to "ferret through a complaint, searching for viable claims." Sloan v. Smith, Civil No. 6:09-cv-5, 2009 WL 453298, at *4 (W.D. Va. Feb. 24, 2009); see also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). With these restrictions in mind, the court does not need to comb through Plaintiff's Complaint to find the best or even the most tenable causes of action. Rather, on its face, Plaintiff's Complaint makes clear that she is suing the United States Department of Education for a violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. That law governs Plaintiff's Complaint and her allegations.[6]

The United States Department of Education ("Defendant" or "DOE") enjoys sovereign immunity from suits under the FDCPA. Absent a clear and express waiver, the United States

---

[6] Plaintiff's *pro se* Complaint, although ostensibly a legal claim, is really nothing more than Plaintiff's belief that she should not have to pay her loan because she failed out of Yale. Plaintiff admits that she signed the note and, at least in theory, admits that she owes the money. (See Pl.'s Resp. ¶ 3.) Her basic complaint is that "[t]he Yale University professors had quite a scam going." (Id.) Even if that is true, however, it is not grounds for Plaintiff to avoid her debt.

- 5 -

and its agencies enjoy sovereign immunity from suit. See FDIC v. Meyer, 510 U.S. 471, 475 (1994). Because the FDCPA does not contain such a waiver, Plaintiff may not pursue a claim against the DOE, an agency of the United States government, for an alleged violation of the FDCPA. See Wagstaff v. U.S. Dept. of Ed., 509 F.3d 661, 664 (5th Cir. 2007) ("[B]ecause the FDCPA does not contain an unequivocal and express waiver of sovereign immunity, the district court correctly held that it lacked subject matter jurisdiction in this case."); Dawveed v. Belkin, Case No. DKC 12-0711, 2013 WL 497990, at *2 (D. Md. Feb. 7, 2013); Coble v. Wilkins, Case No. 1:11CV211, 2012 WL 665976, at *2 (M.D.N.C. Feb. 29, 2012) (Magistrate Judge's Report) ("[T]he FDCPA does not contain a waiver of sovereign immunity for suits against the United States."), adopted by 2012 WL 1450047, aff'd 475 F. App'x 17 (4th Cir. 2012).

Furthermore, Defendant enjoys sovereign immunity from suits seeking injunctive relief. This Court cannot enjoin the DOE from collecting Plaintiff's loan debt or require it to return collected funds to Plaintiff. See 20 U.S.C. § 1082 (2014) ("In the performance of, and with respect to, the functions, powers, and duties, vested in him by this part, the Secretary may . . . sue and be sued . . . in any district court of the United States . . . but no . . . injunction . . . shall be issued against the Secretary or property under the Secretary's control . . . ."); DiNello v. U.S. Dep't of Ed., Case No. 06 C 2763, 2006 WL 3783010, at *3–4 (N.D. Ill. Dec. 21, 2006) ("The limited waiver of sovereign immunity contained in [the Higher Education Act] generally does not include suing the Department of Education for injunctive relief or other similar process. . . . It is clear that the Department of Education has the power to collect student loans that have been assigned to it. . . . Since Counts II and III seek injunctive relief only, they do not state any basis for supporting jurisdiction in either the state court or federal court. Counts II and III will be dismissed for lack of jurisdiction.").

Finally, insofar as Plaintiff seeks redress that is not injunctive in nature, the doctrine of judicial exhaustion bars her claim. "The jurisprudential exhaustion doctrine is a 'long settled rule of judicial administration [which mandates] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" Taylor v. U.S. Treasury Dep't, 127 F.3d 470, 476 (5th Cir. 1997) (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 (1938). The doctrine serves:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

Patsy v. Fl. Int'l Univ., 634 F.2d 900, 903 (5th Cir. 1981) (quoting McKart v. United States, 395 U.S. 185, 195 (1969)). "While courts have discretion in applying the jurisprudential exhaustion requirement, the exercise of that discretion is circumscribed in that a court should only excuse a claimant's failure to exhaust administrative remedies in extraordinary circumstances." Taylor v. U.S. Treasury Dep't, 127 F.3d 470, 477 (5th Cir. 1997) (internal citations omitted).

Situations in which the Court should excuse a claimant's failure to exhaust administrative remedies include situations in which:

> (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be

> futile because the administrative agency will clearly reject the claim.

Id. (citing Patsy, 634 F.2d at 903−04). In the present case, none of these exceptions apply.[7]

Plaintiff has failed to utilize any of the administrative remedies afforded to her. She has not sought a deferment or forbearance in the last twenty years, and she has not sought to discharge her debt on the basis of her claim that the note was fraudulent. (See Delfin M. Reyes Decl. ¶ 17, June 12, 2014 [ECF No. 7-3].)[8] She has not made any constitutional challenge to the loan procedures or the DOE's method of loan enforcement. She has not levied any claim that would be coextensive with the administrative remedy, and there is no evidence that the DOE would summarily reject her claims. In fact, the DOE has stated that, if she can offer evidence that payments were made and not credited, they would reduce her loan accordingly. In response to a request from Senator Alfonse D'Amato's office on Plaintiff's behalf, the DOE stated:

> If Ms. Bond believes that she has made payments on her loan that are not reflected in her account balance, she should request a payment history from the loan holder. This history will show what payments have been received and posted to her account and how these payments have been applied to principal, interest, and other applicable charges. ***If she finds that her records differ from those of the guarantor, she should send the guarantor copies of the fronts and backs of the canceled checks for any payments not accounted for so that her account can be properly adjusted***.

(Pl.'s Resp. Ex. D (emphasis added).) It is clear, therefore, that an adequate administrative remedy exists; Plaintiff has merely failed to avail herself of it. Therefore, jurisprudential exhaustion justifies dismissing her action.

---

[7] Defendant has pointed out that the Fourth Circuit has not directly adopted the doctrine of judicial exhaustion in cases where exhaustion is not mandated by statute. Nevertheless, I believe the Supreme Court's guidance in McKart v. United States, 395 U.S. 185, 192–195 (1969), is sufficient to require Plaintiff to seek an administrative solution with the DOE before filing suit in this court.

[8] Delfin M. Reyes is a Loan Analyst with the Department of Education.

- 8 -

## CONCLUSION

Because the DOE enjoys sovereign immunity from claims under the FDCPA and from suits seeking injunctive relief, there is no subject matter jurisdiction for Plaintiff's claims. Moreover, even if there was subject matter jurisdiction, Plaintiff has not utilized any of the available administrative remedies. In the Court's opinion, the doctrine of jurisprudential exhaustion should and does bar her claims. Defendant's Motion to Dismiss will be granted.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to Plaintiff and all counsel of record.

Entered this 18th day of August, 2014.

                                          s/Jackson L. Kiser
                                          SENIOR UNITED STATES DISTRICT JUDGE